### HENRY B. GRAVES *vs.* GEORGE LOCKWOOD AND ANOTHER.

An attorney who had conducted a suit in which *L* was plaintiff, charged his fees to *L* and *W* jointly, and brought an action against both to recover them. An auditor, to whom the case was referred, found that *L* and *W* called on the attorney together, *W* being the father-in-law of *L*, and together stated the case, which was a claim of *L* for damages for a personal injury—*W* saying " We

have a case that we want to lay before you and have you prosecute if you think best," and in the course of the conversation also saying "If you think the case a good one we want you to go through with it;" but that nothing was said directly by either party as to whether $W$ would be responsible for the attorney's fees, and that $W$ did not intend to be understood as agreeing to be responsible though the attorney supposed he was to be so, and charged his fees to them both. On these facts the auditor submitted the question to the court as a question of law whether $W$ was liable. Held, that the question whether $W$ employed the attorney was a question of fact which should have been decided by the auditor, and that the facts as found presented no question which the court could decide as a question of law.

Remarks of the court as to the duty of auditors and committees in all such cases.

Also, as to the duty of the attorney, in the uncertainty in which the matter stood, and in view of his professional knowledge, to have inquired of $W$ whether he intended to be liable for his fees, and to have had the matter clearly understood.

Book Debt; referred in the superior court to an auditor, the material part of whose report was as follows :—

The defendant Lockwood, who had received an injury by the falling of a scaffolding on which he was working, for which he conceived that one Hotchkiss was liable to pay him damages, went to Litchfield for the purpose of consulting the plaintiff, who was an attorney at law residing there, in reference to the matter, and employing him to bring a suit for him if he should advise it. On his way he called on the defendant Woodruff, who was his father-in-law, and requested him to go with him to see the plaintiff. Woodruff, as Lockwood's friend, and to oblige him, went with him and called upon the plaintiff at his office. They made known their business, and Woodruff said to him, " We have a case we want to lay before you, and have you prosecute if you think best," or words to that effect. Both of the defendants made statements regarding the facts of the case, and during the interview Woodruff said to the plaintiff that if he thought the case a good one they wanted him to go through with it. Woodruff manifested to the plaintiff by his conversation at the time, and at other times afterwards, that he felt an interest in the case, but he neither had, nor did he state to the plaintiff that he had, any pecuniary interest in the case, and he was not to have any portion of the damages if any should be recovered, though the plaintiff supposed that he was to be responsible to him for his fees

and disbursements in the suit, and charged the same to the defendants jointly. Woodruff did not intend to give the plaintiff to understand that he would be responsible to him for any of his charges. Nothing was said upon the subject by either party, and Woodruff did not know until the present suit was brought, (which was nearly six years after the transaction,) that the plaintiff had made any charge against him, and he never agreed to pay his charges unless the above language or conduct amount to such agreement. The plaintiff having heard the statements of the defendants concerning the injury, advised that a suit be brought against Hotchkiss in favor of Lockwood, and shortly after brought such suit. Lockwood, at the interview, said to the plaintiff that he was poor, which was true. The plaintiff said he would furnish funds and carry on the case, and did so afterwards to some extent. Woodruff was at the time, and has ever since been, in good pecuniary condition. The case was afterwards tried to the jury, the plaintiff acting as counsel for Lockwood, and resulted in a verdict against him. Woodruff was a witness in the case, and testified on the trial. The auditor found the charges in the plaintiff's bill to be reasonable in amount, and that the defendant Lockwood was liable to pay the same to the plaintiff; and that if the court should be of opinion that the law was so that the defendant Woodruff, by reason of the facts found, was also liable to the plaintiff for the same, then he found both the defendants indebted to the plaintiff, in the sum of seventy dollars and seventy-nine cents; but that unless the law was so, the defendant Woodruff was not indebted, but was entitled to recover of the plaintiff his costs.

The superior court (*McCurdy, J.,*) accepted the report and rendered judgment for the plaintiff, and the defendant moved for a new trial.

*E. W. Seymour*, in support of the motion.

*Hubbard*, with whom was *Graves*, contra.

HINMAN, C. J. The question in this case was, whether the

defendant Woodruff joined with the other defendant Lockwood in employing the plaintiff, as the attorney of both, to prosecute the suit of Lockwood against Hotchkiss, or whether the plaintiff was only employed for that purpose by Lockwood alone.　This, though a very simple question of fact, was one which the auditor did not feel willing to decide, and he therefore attempts to set out the facts in his report, for the court to say whether, in point of law upon those facts, there was such a joint employment as was claimed by the plaintiff. Now there can be no doubt that the facts thus set out might have authorized the auditor to find such a joint employment, but the question is whether they absolutely prove such an employment, so as to demand of the court as a question of law upon them, and upon all similar facts in like cases, to say that a joint employment is absolutely proved by them.　The superior court in rendering a judgment for the plaintiff came to the conclusion that those facts in point of law were not only sufficient to justify such a judgment, but absolutely to demand it, because the auditor submits to the court only the simple question whether " the law is so that the defendant Woodruff by reason of the facts herein found is liable," and he goes on to find that unless the law is so, then the defendant Woodruff, is not liable.　It is clear therefore that, if such is the law, then every other case resting on the same or similar facts must be controlled by it.　We think, however, that these facts and circumstances are only evidence from which the auditor or a jury might have inferred and therefore found such an employment as was claimed by the plaintiff, but that they do not absolutely and conclusively prove the employment, so as to justify a court in determining as matter of law that the employment was established by them.　We think moreover that it is much the most proper course for auditors and committees and courts, when trying facts, to settle questions of this sort, rather than, by attempting to change them into questions of law, to shift the responsibility of determining them from themselves upon the courts of law.　No statement of such a question can be made that will present it to a court of law in precisely the same light that it was presented to the auditor.

It does not depend merely upon what was said or done at the time of the supposed engagement, but upon what the parties understood and believed to be intended. In point of form there might be an engagement and yet the circumstances be such that no one would so understand it. Suppose the known responsibility of the parties had been reversed, so that Lockwood alone would have been abundantly able to pay any amount of fees that might accrue in the case, and Woodruff's security had been of no value whatever; would any one have inferred from what was said that it was their intention jointly to engage the plaintiff to prosecute the suit? The facts then were equivocal. It might have been that there was an intention jointly to engage the plaintiff, and it was we think equally probable that Woodruff only went with his son-in-law as his friend, to assist in making a statement of his case to his counsel, and to advise as to the propriety of commencing a suit after the opinion of counsel had been taken upon the matter. The auditor does not find that the plaintiff understood Woodruff as intending to employ him on his own account. He does indeed find that the plaintiff believed Woodruff to be responsible to him. But whether he so believed from the mere form in which the case was stated, the defendant Woodruff saying, "we have got a case to lay before you," &c., or whether he really supposed that Woodruff by that or some similar expression intended to retain him jointly with his son-in-law, the auditor does not say. And should we determine the case upon the assumption that this finding is tantamount to a finding that the plaintiff understood and believed that the parties really intended jointly to employ him in the prosecution of the suit, we fear that we should be acting upon the presumed existence of a fact which the conscience of the auditor would not allow him directly to find. As the auditor finds that Woodruff did not intend to give the plaintiff to understand that he would be responsible to him for his charges in the prosecution of that suit, the only ground upon which he can be held liable is either that he purposely misled the plaintiff to believe otherwise, or was so grossly negligent in his conduct as to induce the plaintiff to believe other-

. wise. Now there is no pretence that there was any intention to mislead. And upon the question of negligence we think the circumstances were of so equivocal a character as to have made it the duty of the plaintiff, before he relied upon the responsibility of Woodruff for his charges, to have inquired of him expressly whether he would be liable for them. And if he was in fact misled, it was in part at least in consequence of his own neglect to make any such inquiry. An auditor or a jury in determining the question whether the plaintiff, under the circumstances detailed in the report, had been misled, either intentionally or unintentionally on the part of Woodruff, might reasonably take into consideration the fact that the plaintiff, as a professional man to whom the defendants were applying for advice, would certainly not be very liable to be misled by the mere omission of the parties to inform him that the friend of the party who had received the injury did not intend to be responsible for the charges of prosecuting the suit, and might therefore conclude that it was the duty of the attorney, if he was in doubt upon the point, to inquire directly of them what was intended or expected on that subject. So the length of time that has intervened between the time when the supposed engagement was entered into and the commencement of the suit, without any claim being made by the plaintiff, might be considered of some importance. And there can be no doubt we think, that the direct finding of the auditor as to the employment of the plaintiff, either by an express engagement or such circumstances of negligence or fraud as would be tantamount thereto, would probably be more correct than any opinion of a court formed upon a statement of the facts by another could possibly be.

We are of opinion therefore that the court erred in attempting to settle the question as a question of law, and that the proper course would have been, either to have determined the case in favor of the defendant Woodruff, on the ground that no liability on his part had been found by the auditor, or on remonstrance to the report to have sent it back to the auditor to have the fact expressly found one way or the other, or for the court to have heard evidence for itself and on such evi-

dence to have determined the fact; and on this ground we advise the superior court to grant a new trial.

In this opinion the other judges concurred.